IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        CRIMINAL ACTION NO. 5:18-cr-00068

RONALD COLLINS,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant's Motion to Dismiss Indictment* (Document 48), the *Memorandum in Support of Defendant's Motion to Dismiss Indictment* (Document 54), the *Response of the United States to Defendant's Pre-Trial Motions* (Document 58), and the *Defendant's Reply to the Government's Response to Defendant's Motion to Dismiss Indictment* (Document 61). The Court has also reviewed the *Defendant's Motion to Strike Surplusage from Count Two of the Indictment* (Document 52), the *Response of the United States* (Document 58), and the *Defendant's Reply* (Document 62). Pursuant to an *Order of Reference* (Document 29) entered on April 5, 2018, the motion was referred to the Honorable Omar J. Aboulhosn, United States Magistrate Judge, for proposed findings of fact and recommendation for disposition. On June 5, 2018, Magistrate Judge Aboulhosn submitted his *Proposed Findings and Recommendation* (PF&R) (Document 64). The Court has reviewed the *United States Objections to Proposed Findings and Recommendation* (Document 67) and the *Defendant's Objections to the Magistrate Judge's Proposed Findings and Recommendations* (Document 69). For the reasons stated herein,

the Court finds that the objections of both parties should be overruled and the Magistrate Judge's PF&R adopted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case began with the filing of a criminal complaint against the Defendant, Ronald Collins, on March 13, 2018. The criminal complaint alleged that Mr. Collins knowingly made a false statement intended to deceive a firearms dealer, and that he possessed a weapon while being a prohibited person who has been previously adjudicated as a mental defective or committed to a mental institution. On April 3, 2018, Mr. Collins was indicted. In Count One, the indictment charges Mr. Collins with making a false written statement on ATF Form 4473 intended to deceive a federally-licensed firearms dealer in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). Count Two of the indictment charges Mr. Collins with the illegal possession of a weapon after having been adjudicated a mental defective and being committed to a mental institution in violation of 18 U.S.C. §§ 922(g)(4) and 924(a)(2). On May 29, 2018, the Defendant filed his motion to dismiss the indictment in its entirety and his motion to strike surplusage from Count Two. The United States responded on June 4, 2018, and the Magistrate Judge issued a PF&R on June 5, 2018. The United States and the Defendant filed their objections on June 11, 2018, and neither party filed a response to those objections. The trial is scheduled to begin on June 25, 2018.

## APPLICABLE LAW

"[T]o survive a motion to dismiss sought pursuant to Rule 12 [of the Federal Rules of Criminal Procedure], an indictment must allege facts that, if proven true, would sustain a violation of the offense charged." *United States v. Hasan*, 747 F.Supp2d 599, 602 (E.D. Va. 2010). "An

indictment is sufficient if it: 1) alleges the essential elements of the offense charged and provides the defendant with notice of the crime with which he is charged; and 2) enables the defendant to plead double jeopardy in any future prosecution for the same offense." *United States v. Lang*, 766 F.Supp. 389, 395 (D.Md. 1991). "A 12(b) motion is permissible only when it involves a question of law rather than fact." *United States v. Shabbir*, 64 F.Supp.2d 479, 481 (D.Md. 1999) (citation omitted). A Court cannot grant the motion to dismiss under Rule 12 if a Defendant's "legal contentions are inextricably bound up with the facts of the case." *Id.*

Rule 7 of the Federal Rules of Criminal Procedure states that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). "The purpose of Rule 7(d) is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in an indictment, or not essential to the charge, or unnecessary, or inflammatory." *United States v. Poore*, 594 F.2d 39, 41 (4th Cir. 1979) (citations omitted). "A motion to strike surplusage from the indictment should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006) (citations omitted).

The Defendant's motion to dismiss was referred to Magistrate Judge Aboulhosn pursuant to 28 U.S.C. § 636(b)(1)(B), for submission of proposed findings and recommendation. The Court is required to "make a de novo determination of those portions of report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## DISCUSSION

### A. *Motion to Dismiss Indictment*

The Defendant seeks dismissal of the indictment in its entirety, first arguing that 18 U.S.C. § 922(g)(4) is unconstitutional as it is applied to him. The Defendant asserts that, during criminal proceedings in the Circuit Court of Raleigh County, West Virginia, in 2012 and 2013, he was twice evaluated for competency and both times declared competent. However, in December 2013, after being charged with the felony offense of making terroristic threats, the Circuit Court of Raleigh County granted a motion requesting the Defendant undergo a third competency evaluation. The results of that third evaluation concluded that the Defendant was incompetent to stand trial, but that his competency could be restored following inpatient treatment, and he was subsequently involuntarily committed to Sharpe Hospital. The Defendant argues that the third competency evaluation was fatally flawed because it did not comply with the standards governing competency evaluations provided in West Virginia Code § 27-6A-2(b) because the medical professional evaluating Mr. Collins was not provided with the requisite information necessary to perform the evaluation. The Defendant also argues that he was found incompetent during the third evaluation due to the Southern Regional Jail's failure to provide him with his prescribed anti-psychotic medication. According to the Defendant, these combined failures in the procedure violated his right to due process under the Fifth and Fourteenth Amendments, and applying 18 U.S.C. § 922(g)(4) to him under these circumstances is unconstitutional. Further, because he argues that Section 922(g)(4) is unconstitutional as applied to him, he also argues that Count One should be dismissed. Mr. Collins asserts that, because he was improperly and unconstitutionally committed

4

to a mental institution, it was not a lie to state on the ATF form that he had never been committed to a mental institution.

The Defendant alternatively argues that the indictment should be dismissed because 18 U.S.C. § 922(g)(4) is unconstitutional on its face in that it impermissibly restricts the Defendant's and other similarly situated persons' Second-Amendment right to possess a firearm. Based on the United States Supreme Court's ruling in *District of Columbia v. Heller* that the Second Amendment guarantees an individual right to keep and bear arms, 554 U.S. 570, 595 (2008), Mr. Collins argues that Section 922(g)(4) is unconstitutional because the prohibition related to commitment to a mental institution is not sufficiently tailored to achieve a government interest under strict or intermediate scrutiny. Mr. Collins argues that his status as an American citizen affords him the individual fundamental right to possess a firearm, and that the United States cannot sufficiently justify its interest in preventing him from exercising that right due to his commitment to a mental institution.

The United States counters that the Defendant's as-applied due process argument fails because there is no question that the Defendant was committed to a mental institution and that he later possessed a firearm without having his right to do so reinstated in violation of Section 922(g)(4). The Government further argues that the *Heller* decision specifically held that the individual right under the Second Amendment was not unlimited, and that the right belongs to "law abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635. With respect to the Defendant's facial challenge to Section 922(g)(4), the Government argues that the law is sufficiently tailored under both an intermediate and strict scrutiny standard to an important or compelling interest in disarming citizens who have been committed to mental

5

institutions based on the well-documented increased risk of harm posed to themselves and others by mentally ill persons who possess firearms. Thus, the United States argues that both of the Defendant's challenges should fail and the motion to dismiss should be denied.

The Magistrate Judge recommends denying the Defendant's motion to dismiss. Relying on the language of *Heller* itself and Fourth Circuit precedent in *United States v. Midgett*, he found that that the Second Amendment right does not extend to persons "Congress considered too dangerous to possess guns." (PF&R at 16) (quoting *United States v. Midgett*, 198 F.3d 143, 146 (4th Cir. 1999).) Magistrate Judge Aboulhosn found that, because it is undisputed that Mr. Collins was indeed involuntarily committed to a mental institution, and because he did not challenge that order or seek to have his right to possess a firearm reinstated, his as-applied challenge amounts to an inappropriate collateral attack on the state court judgment ordering his committal. Such an attack, according to the Magistrate Judge, is inappropriate for this Court to consider. Mr. Collins was represented by counsel during his state criminal proceedings and had ample opportunity to challenge his competency and commitment issues. Because it is undisputed that Mr. Collins was involuntarily committed to a mental health institution, and because that commitment was never challenged, the Magistrate Judge recommends that the Court deny the Defendant's motion.

The Defendant objects to the Magistrate Judge's recommendation, arguing that his alleged due process violations "are still ripe for consideration as they have been brought within the context of the pending federal prosecution against" him. (Def.'s Objections, at 5.) The Defendant also objects to the Magistrate Judge's recommendation that Section 922(g)(4) is not unconstitutional on its face, arguing that such a finding fails to take into account that "persons, such as the

6

Defendant, who have been previously committed to mental institutions can be restored to competency and returned to the community." (*Id.* at 8.)

The Court finds that the Defendant's objections should be overruled and the motion to dismiss should be denied. Pursuant to 18 U.S.C. § 922(g)(4), "[i]t shall be unlawful for any person . . . (4) who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to . . . possess in or affecting commerce, any firearm or ammunition." As to the Defendant's as-applied challenge to Section 922(g)(4), the Court finds that this Court is not the appropriate venue to litigate the state circuit court's order involuntarily committing Mr. Collins. In *Lewis v. United States*, the Supreme Court of the United States upheld a defendant's conviction under Section 922(g) for being a felon in possession of a weapon where the defendant argued that the statute did not apply to him because his predicate felony conviction was unconstitutional. 445 U.S. 55, 65 (1980). The Court reasoned that the Section 922(g) conviction was constitutional even if his predicate state court felony conviction was found to be unconstitutional after he was charged under Section 922(g). *Id.* The Supreme Court emphasized that Mr. Lewis could have "challenge[d] the validity of the prior conviction, or otherwise remove[d] his disability, before obtaining a firearm [in violation of Section 922(g)]. We simply hold today that the firearms prosecution *does not open the predicate conviction to a new form of collateral attack*." *Id.* at 67 (emphasis added).

The Fourth Circuit has adopted a similar position, finding that "the fact that [a defendant's underlying] conviction was vacated after he possessed the firearm [in violation of Section 922(g)] . . . is irrelevant." *United States v. Kahoe*, 134 F.3d 1230, 1235 (4th Cir. 1998); *see also*, *United States v. Locke*, 293 F. Supp. 3d 559, 563 (E.D. Va. 2018) ("A later invalidation or expungement

7

of the state court predicate [misdemeanor crime of domestic violence] conviction does not operate retroactively to remove the disability [to possess a firearm] at the time the person possessed the firearm"). Similarly, here, it is undisputed that Mr. Collins had been involuntarily committed to a mental institution and that he had not had the disability from possessing a firearm, that arises from that committal pursuant to Section 922(g)(4), removed at the time of possession. Thus, his motion to dismiss should be denied.[1]

Further, Magistrate Judge Aboulhosn found that the Defendant's facial challenge to the constitutionality of Section 922(g)(4) should be denied. Without going into a detailed historical analysis of whether Section 922(g)(4) burdens conduct that comes within the scope of the Second Amendment, Judge Aboulhosn found that the statute passes constitutional muster under either intermediate or strict scrutiny. This Court agrees. In *Heller*, the Supreme Court found that the Second Amendment to the United States Constitution protects, at its core, "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 570.); *see also*, *United States v. Tooley*, 717 F.Supp.2d 580, 584 (S.D.W. Va. 2010) (Chambers, J.). However, the Court also "signaled that its decision should not be over-read by lower courts as invalidating all existing firearm regulations." *Tooley*, 717 F.Supp.2d at 584. The *Heller* court specifically held that

> [a]lthough we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the ***possession of firearms by*** felons and the ***mentally ill***, or laws forbidding the carrying of firearms in sensitive places such as

---

1 In his objections to the PF&R, the Defendant moves the Court for permission to introduce evidence at trial concerning the State of West Virginia's alleged violation of his due process rights during the underlying criminal proceedings in which he was involuntarily committed. Because the constitutionality of the Defendant's involuntary committal is irrelevant to his violation of Section 922(g), and for the reasons stated above, the Court finds that this motion should be denied and that no evidence regarding the alleged due process violations should be permitted during trial.

>schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* (emphasis added); *United States v. Chester*, 628 F.3d 673, 676 (4th Cir. 2010).

In light of *Heller*, "challenges to firearm regulations of all kinds immediately began to crop up across the country." *Tooley*, 717 F.Supp.2d at 585. To resolve these issues, the Fourth Circuit adopted a two-part approach to Second Amendment claims challenging the constitutionality of laws and regulations. "The first question is whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *Chester*, 628 F.3d at 680. "If it was not, then the challenged law is valid." *Id.* However, if the challenged law or regulation does burden conduct that falls within the understood historical scope of the Second Amendment, "then we move to the second step of applying an appropriate form of means-end scrutiny." *Id.*

Given the history of mental illness and the treatment of citizens who suffer from it in the United States, it is difficult to determine how those with mental illnesses would have been treated concerning firearms at the ratification of the Second Amendment. However, even if possession of a firearm by a person with a mental illness is encapsulated as a core part of the Second Amendment right, Section 922(g)(4) is constitutional under a strict scrutiny standard. Even under the statistics cited by the Defendant in his oral argument and his objections to the PF&R, it is statistically supported that citizens suffering from a mental illness are more likely to commit harm with a firearm than those who are not, and Congress has a compelling interest it reducing that risk of danger. (*See*, PF&R at 16; United States' Resp. in Opp. at 19-26.)

Congress has narrowly tailored Section 922(g)(4) to curb a person's Second Amendment rights upon committal to a mental institution. In other words, Section 922(g)(4) only "infringes"

9

on a person's right to keep and bear arms for protection when said person is mentally defective or has been committed to a mental institution. The provision is narrowly tailored in that it grants states the opportunity to provide a process by which those Second Amendment rights can be regained and the disability removed after competency is restored. Thus, the Court finds that Section 922(g)(4) is constitutional under even a strict scrutiny standard, and the motion to dismiss the indictment should be denied.[2]

### B. Motion to Strike Surplusage

The Defendant also moves to strike surplusage from Count Two of the indictment. Specifically, the Defendant seeks to strike the language from Count Two reflecting that he was "adjudicated as a mental defective." The Magistrate Judge found that the motion should be granted, and the United States presented no argument objecting to Judge Aboulhosn's findings in its objections to the PF&R. Because the Court finds that striking the proposed language will not be prejudicial to the United States or the Defendant, and because the United States made no objection to the Magistrate Judge's finding, the Court finds that this portion of the PF&R should also be adopted, and the motion to strike surplusage from Count Two should be granted.

### CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Objections to the Magistrate Judge's Proposed Findings and Recommendations* (Document 69) be **OVERRULED**, the *United States Objections to Proposed Findings and Recommendations* (Document 67) be **OVERRULED**, the Magistrate Judge's Proposed Findings

---

[2] The Court notes that the United States objects to the PF&R only for the purpose of preserving its alternative arguments for denial of the motion to dismiss not considered by the Magistrate Judge in his PF&R. Because the Court has considered those arguments, the United States' objections are overruled.

and Recommendations (PF&R) (Document 64) be **ADOPTED**, the *Defendant's Motion to Dismiss Indictment* (Document 48) be **DENIED**, and the *Defendant's Motion to Strike Surplusage from Count Two of the Indictment* (Document 52) be **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to Magistrate Judge Aboulhosn, to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:   June 22, 2018

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA